

**CASE DOCKET NO.:**

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE DISTRICT OF MASSACHUSETTS

KELECHI LINARDON, an Individual Pro Se, and on behalf of all others similarly situated if a class is determined, **Plaintiff,**

**v.**

(1) HOME2 SUITES BY HILTON CHELMSFORD LOWELL, (2) DILIP PATEL, (3) NIKUL PATEL, (4) ASHOK PATEL, (5) HITESH PATEL, (6) STEVEN SIMS, (7) LOREN DAY, (8) HILTON WORLDWIDE HOLDINGS INC., and (9) JAMSAN HOTEL MANAGEMENT, **Defendants.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

This is A CIVIL ACTION for Injunctive relief and Damages arising from the Defendants' unlawful and egregious conduct in leasing an uninhabitable, unsafe, and non-compliant dwelling to the Plaintiff, Kelechi Linardon, a person with significant physical disabilities. Defendants' actions directly caused the Plaintiff to suffer at least three separate, serious physical injuries. When the Plaintiff reported these dangerous conditions and her resulting injuries, the Defendants responded with a campaign of retaliation, harassment, intimidation, disability-based discrimination, and the deprivation of essential services, all in violation of the Plaintiff's rights under the United States Constitution and federal and state law.

This poses a direct 'life' threat to her health and safety. Defendants must be restrained from continuously harming Plaintiff, who is also a medical disabled patient. They have already inflicted life-threatening bodily injuries upon Plaintiff.

Plaintiff brings this action seeking relief for Defendants' violations of the Fair Housing Amendments Act (42 U.S.C. §§ 3601-3619), Title II of the Americans with Disabilities Act (42 U.S.C. § 12132), Title VI of the Civil Rights Act, Section 504 of the Rehabilitation Act, the Civil Rights Act of 1871 (42 U.S.C. § 1983), and related Massachusetts state laws, including the state anti-discrimination statute (M.G.L. c. 151B), the Consumer Protection Law (M.G.L. c. 93A), and statutes governing the landlord-tenant relationship (M.G.L. c. 186 and c. 239). Plaintiff seeks compensatory and punitive damages, as well as immediate preliminary and permanent injunctive relief.

### JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question), as the Plaintiff's claims arise under the Constitution and laws of the United States, including the Fair Housing Act, 42 U.S.C. § 3601 et seq.; the Americans with Disabilities Act, 42 U.S.C. § 12131 et

seq.; Title VI of the Civil Rights Act of 1964; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they are so related to the federal claims that they form part of the same case or controversy.

Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and all Defendants reside or conduct business in this district.

## THE PARTIES

Plaintiff Kelechi Linardon, on behalf of herself and all others similarly situated if a class is determined, is an individual with disabilities who, at all times relevant to this complaint, has been a long-term Stay tenancy at the premises located at 12 Independence Drive, Chelmsford, Massachusetts 01824. Her mailing address is P.O. Box 52661, Boston, MA 02205.

Defendant Home2 Suites by Hilton Chelmsford Lowell (the "Hotel") is a business entity that owns, operates, and/or manages the extended-stay hotel located at 12 Independence Drive, Chelmsford, Massachusetts, and acts as the Plaintiff's landlord.

Defendants Dilip Patel, Nikul Patel, Ashok Patel, and Hitesh Patel are, upon information and belief, the owners of the Hotel and are individually and collectively responsible for its operations, policies, maintenance, and compliance with all applicable laws.

Defendant Jamsan Hotel Management ("Jamsan") is a Massachusetts-based hotel management company with its principal office located at 110 Hartwell Ave Suite 300, Lexington, MA 02421. Based in an unassuming office park in Lexington, Jamsan operates 70 hotels throughout New England and beyond, along with coffee shops, convenience stores, and gas stations. Jamsan is owned and controlled by the Patel family, including Dilip Patel (President), his nephew Ashok Patel (Vice President), and his son Nikul Patel. As reported by the Boston Globe on August 1, 2024, "Jamsan is a loosely connected hotel empire of limited liability companies owned by Patel relatives and partners."

Defendant Steven Sims is, upon information and belief, the General Manager of the Hotel and an agent of the owners. He is responsible for the day-to-day management of the premises and has personally engaged in unlawful conduct directed at the Plaintiff.

Defendant Loren Day is, upon information and belief, the Regional Director with supervisory authority over the Hotel and its management. She is an agent of the owners, was made aware of the unlawful conditions and conduct, and failed to take appropriate remedial action.

Defendant HILTON WORLDWIDE HOLDINGS INC. (hereinafter "Hilton Worldwide") is, upon information and belief, a corporation that owns, manages, and franchises hotel brands, including the Home2 Suites by Hilton brand. It conducts substantial business in this judicial district. Hilton Worldwide is responsible for establishing, maintaining, and enforcing the brand standards, quality controls,

reservation systems, and guest loyalty programs that apply to its franchised locations, including the Defendant Hotel.

## FACTUAL ALLEGATIONS

### Plaintiff's Decision to Rent from Defendants

Plaintiff Linardon, a person with mobility impairments, entered into an Extended-Stay Agreement to reside at the Hotel from February 14, 2026, through December 2026.

Prior to finalizing the agreement, Plaintiff engaged in extensive discussions with Hotel management, explicitly detailing her disability-related needs. She was promised, as a condition of her tenancy, a specific handicap-accessible room with a roll-in shower and a firm bed necessary for her medical condition.

Plaintiff is a long-time, loyal customer of the Hilton family of brands and holds the status of Hilton Honors Diamond member, the highest level of the guest loyalty program.

Plaintiff's decision to enter into the long-term tenancy agreement with the Defendant Hotel was based entirely on her reasonable reliance on the Hilton brand's reputation for quality, safety, accessibility, and consistent service standards, which she had come to expect as a Diamond member.

The Defendant Hotel is listed on Hilton Worldwide's official website and is bookable through Hilton Worldwide's central reservation system, creating the clear impression that it is a part of and controlled by the Hilton corporate system.

Throughout her tenancy, Plaintiff is expected continued to accrue Hilton Honors points from her stay, further solidifying the direct relationship and representation that she is a member of the Hilton brand.

Hilton Worldwide, by virtue of its branding, advertising, reservation system, and loyalty program, created an 'apparent agency' relationship, holding the Defendant Hotel out to the public, and specifically to the Plaintiff, as its agent. Plaintiff reasonably relied on this representation to her detriment, resulting in the physical injuries and other harms detailed in this complaint.

### Defendants Jamsan and the Patel Family's Pattern of Unethical and Predatory Business Practices

Upon information and belief, Defendants Jamsan Hotel Management and the Patel family have a well-documented history and pattern of engaging in unethical, unfair, and deceptive business practices, victimizing vulnerable residents for profit.

As extensively reported by the Boston Globe on August 1, 2024, in an article titled "Hotel owners are earning millions in contracts by turning their suburban outposts into shelters for homeless and migrants," Jamsan Hotel Management, owned and operated by the Patel family, has been the subject of numerous complaints regarding dangerous and uninhabitable conditions at their properties.

The article documented that Jamsan-managed hotels were paid $7.5 million over one year by the State of Massachusetts to shelter homeless and migrant families, even as city health inspectors documented more than 330 violations, "including rodent activity and bedbugs, mold and water damage."

Significantly, the article reported that "the contracts even flowed into dated buildings that were suffering from water damage and riddled with mold, such as the Brighton motel now known as Catholic Charities Inn, managed by a Jamsan executive, Nikul Patel."

According to the Boston Globe investigation, Jamsan and affiliated Patel-owned hotels were paid an estimated $35 million in state contracts. The investigation found that Jamsan executives were "paid $7.5 million over a year, even as city health inspectors documented more than 330 violations, including rodent activity and bedbugs, mold and water damage."

The pattern of victimizing vulnerable tenants extends beyond Plaintiff's case. The article reported that "low-income tenants who had previously been living week to week at several hotels complained that the owners tried to drive them out, sometimes by doubling their rent, to make way for the families coming via lucrative state contracts." Boston 25 News reported that tenants were forced out of the Jamsan-tied Best Western in Concord to make way for the state's lease. Tenants at their Yarmouth Resort received warnings that rates would more than double shortly before migrants were moving in.

The article noted that the city of Methuen fined Jamsan $46,600 "for failing to comply with orders to eliminate pests and correct water and electrical problems while migrants were living at their hotel there."

The Boston Globe reported that executives from Jamsan declined to answer questions submitted by the Globe, demonstrating a pattern of avoiding accountability.

As stated by one Methuen City Council member in the article: "No one should be profiting from this crisis."

This documented pattern demonstrates that Defendants Jamsan and the Patel family's conduct toward Plaintiff is not isolated but represents a systemic, deliberate business model of attracting vulnerable tenants (including disabled persons, homeless families, and migrants), taking their money, providing uninhabitable and dangerous premises, ignoring health code violations, and retaliating against residents who complain.

**The Initial Injuries and Dangerous Conditions**

Relying on these explicit representations and promises, Plaintiff began her tenancy on the evening of February 14, 2026.

Upon arrival, Plaintiff immediately discovered that the Defendants' representations were false. The room contained a dangerously soft bed, contrary to what was promised, and a catastrophically defective roll-in shower.

Late that same night, the defective shower drain caused a massive and rapid flood of the bathroom, which spread into the main living area. As Plaintiff attempted to mitigate the flood, her wheelchair slipped on the wet floor, causing her to fall and suffer the first of at least three serious physical injuries. These

injuries have required urgent medical procedures, numerous emergency room and hospital visits, and may require future surgeries.

In addition to the hazardous shower, the room was plagued by a constant, loud, jackhammer-like banging noise from within the walls, making the room uninhabitable and violating the Plaintiff's right to quiet enjoyment. As a direct result of this incessant noise, which lasted for weeks, the Plaintiff suffered serious medical complications to her ears and other parts of her body, requiring her to be seen at an emergency urgent care facility and putting her under ongoing medical care on sensitive part of the body.

Plaintiff immediately notified management of the defects and her injury. Instead of providing aid or making repairs, Defendants, led by Defendant Sims, responded with a campaign of abuse and retaliation.

On February 16, 2026, Defendant Sims entered Plaintiff's room, verbally abused her, showed no remorse for her injury, and threatened to call the police to have her illegally thrown out of the building. Defendant Sims then proceeded to openly mock Plaintiff's disability.

For eight weeks, from February 14, 2026, to the present, April 14, 2026, Defendants have willfully refused to repair the hazardous shower, completely depriving Plaintiff of the ability to bathe in her own dwelling. As a direct result of being unable to shower for over eight weeks and continuous, the Plaintiff has developed and suffered further serious and painful medical harm to a delicate part of her body, which required her to be rushed to urgent care and necessitates ongoing treatment, with a potential need for future surgery.

The hazardous conditions were so severe that the Chelmsford Board of Health was called to inspect. The Board issued two separate official violation notices to the Defendants, ordering them to repair the shower. Defendants have ignored these official orders.

Furthermore, for the last three weeks Plaintiff has been infected in her room with ants coming from the outside then entering through the largely uneven open bottom of her front door. The defendants have refused till present to immediately rectify this issue and have failed to bring pest control. This room has so many dangerous harmful defects beyond words which they failed to disclose prior to her coming and she does not even know what can happen next.

**Intervention of Municipal Authorities**

On February 19, 2026, desperate and suffering, Plaintiff contacted the Chelmsford Commission on Disability. On February 20, 2026, representatives of the Commission, the Chairman and the Vice Chairman visited Plaintiff, witnessed the defective conditions firsthand, and immediately contacted Defendant, who again promised remediation but again failed to act. The Commission attempted to contact Chelmsford Building Commissioner, who had approved the Hotel for occupancy, but he was unresponsive.

After nearly two weeks of inaction by the Hotel, the Town Manager was notified. On February 26, 2026, a representative from the Board of Health and the Building Commissioner visited the premises. The representative the Board of Health Director inspected the defective shower and issued an official violation notice to the Hotel, ordering the defect to be repaired within 24 hours. A true and accurate copy of the violation is attached as Exhibit B (to be presented at hearing).

On February 27, 2026, the Board of Health representative-Director returned for a re-inspection and found that the Hotel's attempted repair, done without a professional plumber, had made the flooding worse. The representative issued a second violation, stating the Hotel was "unable to fix" the shower and that "hotel management [is] responsible for finding new accommodation's" and must contact her within 24 hours to ensure the new accommodations were met. A true and accurate copy of the re-inspection violation is attached as Exhibit C (to be presented at hearing).

After her discussion with management, the representative informed Plaintiff that she had ordered them to immediately move her to another comparable accommodation located towards Boston, immediately relocate her to a comparable or superior, fully accessible room on the premises or at a near Boston comparable hotel at Defendants' sole expense for the duration of the contract; emphasizing it should not be further away. The representative specified that the room must be comparable in every respect to what Plaintiff had contracted for, and that the move must not impose any financial hardship, distance hardship, location hardship, or inferior room conditions on the Plaintiff.

However, Defendants failed to meet this requirement. Instead, they proposed a reservation at a distant hotel, falsely claimed it met all requirements, and demanded that Plaintiff pay a higher nightly rate for the entire duration of her contract. This unacceptable offer would have caused Plaintiff additional pain and suffering, severe financial and logistical hardship, and came with no guarantee that the alternative room met her specific handicap accessibility needs or contractual agreements.

To date, Defendants have failed to cure the violations. Plaintiff remains in the defective room, unable to shower since her arrival on February 14, 2026, and has been unable to unpack or settle into her long-term tenancy.

Without any notice or without any prior engagement of planning discussion or communications plans to move her to a different room, on March 14, 2026, Defendants tried to bully, order, and force Plaintiff to move to a same room type on the same floor that has exactly the same room and bathroom shower building defects that was never cured, which they seemed to pretend to forget that it was the same room that Plaintiff and the front desk manager, the town Commission on Disability chairman and the Vice chairman Commission saw on the week of February 20, 2026, deemed it to be unsafe since it has the bathroom defects as the one that Plaintiff is in.

**Further Retaliation and Deprivation of Services**

In further retaliation for Plaintiff's complaints and requests for accommodation, Defendants have systematically breached their agreement to provide weekly housekeeping services. Each week, Plaintiff is forced to plead for the contractually obligated cleaning, only to be met with verbal abuse from staff acting on Defendant Sims' orders. This has forced Plaintiff to hire and pay for her own professional cleaning services on five separate occasions to maintain a sanitary environment, costing her $290.00 ($50 on March 9, 2026; $70 on March 21, 2026; $60 on March 28, 2026; $60 on April 4, 2026 and $50 on April 11, 2026), for which Defendants have refused reimbursement.

Plaintiff has been dehumanized with severe degrading torture and cruelty beyond human tolerance which the law prohibits against any human being, especially a disabled person.

Defendants' actions—providing a dangerous and inaccessible room, causing multiple physical injuries through their negligence, and responding to complaints with threats, harassment, mockery, and the deprivation of essential services—were intentional, malicious, and taken in reckless disregard of the Plaintiff's health, safety, and legally protected rights.

**Invasion of Plaintiff's Privacy**

In addition to the other harms inflicted upon the Plaintiff, Defendants have engaged in a pattern of violating her right to privacy in her dwelling. On numerous occasions, Defendants' employees and other unidentified individuals have entered Plaintiff's room, often under the false pretense of maintenance, and proceeded to take photographs of the room where her personal belongings are with their cell phones without her consent.

For instance, during the week of February 23, 2026, while a maintenance worker was present, an unknown man, described as a tall man of South Asian-Idian descent, walked into Plaintiff's room without permission, did not introduce himself, and began taking pictures. When confronted, he claimed he was assisting the maintenance worker, which is not a justification for intruding upon and documenting the private living space of a tenant. This incident left the Plaintiff feeling traumatized and violated.

Plaintiff has repeatedly and clearly raised concerns with management about these intrusions, telling them to stop violating her privacy and to stop taking unauthorized pictures inside her home. Defendants have ignored these pleas. The most recent incident occurred on Saturday, March 28, 2026, when a maintenance worker called to inspect a leaking sink pipe once again took a picture without seeking or receiving permission.

This continuous and unpredictable intrusion into her private space has destroyed the Plaintiff's sense of security in her own home. She has been made to feel so unsafe and violated that she does not feel she can dress or undress in her own room without fear of being watched or photographed. This constitutes a severe and ongoing intrusion upon her seclusion.

## CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT (Against All Defendants, including Hilton Worldwide and Jamsan)

Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

Defendants entered into a valid and enforceable contract with Plaintiff to provide a safe, habitable, and specifically configured handicap-accessible room with certain agreed-upon services. Plaintiff performed her obligations under the contract. Defendants materially breached the contract by failing to provide the promised premises and services. As a direct result, Plaintiff has sustained significant damages.

### COUNT II – PREMISES LIABILITY (NEGLIGENCE CAUSING PERSONAL INJURIES)
### (Against All Defendants, including Hilton Worldwide and Jamsan)

Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

Defendants, as the owners, operators, managers, and/or franchisors of the property, owed a duty of reasonable care to the Plaintiff, as a tenant and lawful entrant, to maintain the premises in a reasonably safe condition.

Defendants breached this duty by creating, maintaining, and/or failing to repair or warn of dangerous conditions on the premises, including but not limited to the catastrophically defective roll-in shower that was known to cause flooding.

This breach of duty was the direct and proximate cause of the Plaintiff suffering multiple, severe, and distinct physical injuries on at least three separate occasions and when she fell due to the hazardous conditions created by the Defendants' negligence.

As a direct result of these physical injuries, Plaintiff has sustained significant damages, including but not limited to substantial medical expenses for emergency care and ongoing treatment, severe physical pain and suffering, emotional distress, and the need for future medical procedures and care.

## COUNT III – PATTERN OF UNFAIR AND DECEPTIVE PRACTICES BY JAMSAN AND THE PATEL FAMILY (Against Defendants Jamsan, Dilip Patel, Nikul Patel, Ashok Patel, and Hitesh Patel)

Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

Defendants Jamsan Hotel Management and the Patel family own and operate multiple hotels through a network of limited liability companies, engaging in a common scheme and pattern of conduct to maximize profits at the expense of vulnerable tenants' health and safety.

As documented by the Boston Globe in its August 1, 2024 investigation, Defendants Jamsan and the Patels have engaged in a pattern of leasing uninhabitable properties with dangerous conditions including water damage, mold, bedbugs, rodent activity, and electrical problems to vulnerable populations including migrants, homeless families, and now a severely disabled person (Plaintiff).

Defendants have demonstrated a willful and knowing disregard for tenant safety by allowing properties to operate with hundreds of health code violations while pocketing millions in taxpayer and private funds. This pattern constitutes a systematic business practice of unfair and deceptive conduct.

## COUNT IV – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, REHABILITATION ACT, AND TITLE VI OF THE CIVIL RIGHTS ACT (Against All Defendants, including Hilton Worldwide and Jamsan)

Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

Plaintiff is a qualified individual with a disability. Defendants, as operators of a place of public accommodation and, upon information and belief, recipients of federal financial assistance, are subject to Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, Section 504 of the Rehabilitation Act of 1973, and Title VI of the Civil Rights Act of 1964.

Defendants discriminated against Plaintiff on the basis of her disability by failing to provide a promised accessible dwelling, refusing to make reasonable accommodations and modifications, and by harassing, intimidating, and retaliating against her for asserting her rights.

## COUNT V – VIOLATION OF PUBLIC ACCOMMODATION LAWS AND M.G.L. c. 93A

### (Against All Defendants, including Hilton Worldwide and Jamsan)

Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

Defendants' hotel is a place of public accommodation under the Civil Rights Act of 1964 and Massachusetts law. Defendants violated these laws by denying Plaintiff the full and equal enjoyment of the goods, services, and accommodations of their establishment on the basis of her disability.

Defendants engaged in unfair and deceptive acts and practices in violation of the Massachusetts Consumer Protection Law, M.G.L. c. 93A, by misrepresenting the condition of the premises, leasing a dangerously defective unit, and engaging in retaliatory and harassing conduct. This conduct was willful and knowing, particularly given Defendants' documented history of similar misconduct at other properties as reported by the Boston Globe.

## COUNT VI – BREACH OF IMPLIED WARRANTY OF HABITABILITY AND PREMISES

## LIABILITY (Against All Defendants, including Hilton Worldwide and Jamsan)

Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

Defendants breached the implied warranty of habitability and their duties under M.G.L. c. 239 §8A by providing a dwelling with severe defects that materially endangered the health and safety of the Plaintiff.

These dangerous conditions, which Defendants negligently failed to remedy, directly and proximately caused Plaintiff to suffer multiple, serious personal injuries, for which Defendants are strictly liable.

## COUNT VII – RETALIATION (Against All Defendants, including Hilton Worldwide and Jamsan)

Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

Plaintiff engaged in legally protected activities, including reporting code violations and requesting reasonable accommodations. In direct response, Defendants took adverse actions against her, including threats of illegal eviction, harassment, and the withdrawal of essential services, in violation of M.G.L. c. 239 §2A, c. 186 §18, and the Fair Housing Act, 42 U.S.C. § 3617.

**COUNT VIII – BREACH OF THE COVENANT OF QUIET ENJOYMENT (Against All Defendants, including Hilton Worldwide and Jamsan)**

Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

Defendants breached the covenant of quiet enjoyment, in violation of M.G.L. c. 186 §14, through acts and omissions of a grave and permanent character that seriously interfered with Plaintiff's tenancy, including the incessant noise, constant harassment, and deprivation of essential sanitary facilities.

**COUNT IX – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (Against All Defendants, including Hilton Worldwide and Jamsan)**

Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

Defendants' conduct—including the mockery of Plaintiff's disability, public threats of humiliation, and willful creation of inhumane living conditions—was extreme and outrageous, beyond all possible bounds of decency, and was intended to cause, or was taken in reckless disregard of the probability of causing, severe emotional distress. As a direct result, Plaintiff has suffered severe emotional distress.

**COUNT X – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS (Against Defendants Sims and Day, with Hilton Worldwide and Jamsan vicariously liable for their actions)**

Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

Defendants Sims and Day were aware of the valid contract between Plaintiff and Defendant Home2 Suites. Through improper and malicious means, including intimidation and the refusal to authorize repairs and services, they intentionally procured a breach of this contract, causing Plaintiff to suffer damages.

**COUNT XI – RACIAL DISCRIMINATION (42 U.S.C. § 1981) (Against All Defendants, including Hilton Worldwide and Jamsan)**

Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

Upon information and belief, Defendants have subjected Plaintiff to discriminatory treatment because she is a person of color. This discriminatory treatment includes providing a lower standard of service, responding to her requests with hostility and contempt, and generally treating her in a manner markedly worse than similarly situated Caucasian residents and guests. This conduct constitutes an intentional interference with the Plaintiff's right to make and enforce contracts on the same basis as white citizens, in violation of 42 U.S.C. § 1981.

## COUNT XII – INVASION OF PRIVACY (INTRUSION UPON SECLUSION AND M.G.L. c. 214, § 1B) (Against All Defendants)

Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

Under Massachusetts common law and M.G.L. c. 214, § 1B, a person has a right to be free from unreasonable, substantial, or serious interference with her privacy. An intentional intrusion upon a person's solitude or seclusion, of a nature that would be highly offensive to a reasonable person, is a tortious invasion of that right.

A long-term hotel room is a person's dwelling and home, where they have the highest expectation of privacy.

Defendants, by and through their employees and agents, have repeatedly and intentionally intruded upon Plaintiff's seclusion by entering her private dwelling and taking unauthorized photographs of her room and personal effects.

This conduct is highly offensive to a reasonable person and constitutes an unreasonable and serious interference with Plaintiff's privacy. As a direct result of Defendants' actions, Plaintiff has suffered emotional distress, fear, and a loss of her sense of security, for which Defendants are liable.

## COUNT XIII – PROMISSORY ESTOPPEL (In the Alternative to Breach of Contract) (Against All Defendants, including Hilton Worldwide and Jamsan)

Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

The courts of this Commonwealth recognize a cause of action grounded on the doctrine of promissory estoppel, as exemplified by Section 90 of the Restatement (Second) of Contracts. This doctrine does not require that the promise giving rise to the cause of action must be so comprehensive in scope as to meet the requirements of an offer that would ripen into a contract if accepted by the promisee.

Section 90 of the Restatement provides:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

**The Promise:**
Defendants, in order to secure a lucrative long-term tenancy, made clear and unambiguous promises to the Plaintiff that her specific dwelling would be safe, habitable, and fully handicap-accessible, including the specific and material promises of a medically necessary firm bed and a functional roll-in shower. Defendants should have reasonably expected these promises to induce action of a definite and substantial character, namely, that the Plaintiff would commit to a nearly year-long tenancy, pay thousands of dollars, cease her search for other suitable long term Extended Stay housing, and move her life and personal belongings to the Defendants' property.

**Inducement of Action:**

Defendants' promises did, in fact, induce such action. In direct and justifiable reliance upon Defendants' promises of a safe and accessible dwelling, the Plaintiff undertook the substantial actions of entering into the long-term agreement, forfeiting other long term Extended Stay housing opportunities, and physically relocating to the premises.

**Avoidance of Injustice:**
Injustice can only be avoided by the enforcement of the promise. Plaintiff's reliance on the Defendants' promises has resulted in catastrophic harm, including multiple serious physical injuries, significant financial expenditure on a worthless tenancy, and severe emotional distress. Given the Plaintiff's status as a vulnerable person with disabilities who is now trapped in a dangerous living situation that Defendants created, a grave injustice has occurred. Enforcing the promise to provide a safe and accessible dwelling is the only way to prevent further irreparable harm and remedy the substantial harm already inflicted.

## REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Plaintiff is suffering and will continue to suffer immediate and irreparable harm unless Defendants are enjoined from their unlawful conduct. Plaintiff respectfully requests that the Court issue a preliminary and permanent injunction ordering the Defendants to cease their harassment and to immediately provide the Plaintiff with a safe, habitable, and fully accessible dwelling.

**Likelihood of Success on the Merits**
Plaintiff has a strong likelihood of success on the merits. The facts alleged, supported by official municipal violation notices and extensive media documentation of Defendants' pattern of misconduct at other properties, demonstrate clear violations of federal and state law.

**Irreparable Injury**
Without an injunction, Plaintiff will continue to suffer ongoing harm to her physical health, safety, and emotional well-being, including the daily risk of further injury and the deprivation of basic human sanitation. Such harm cannot be adequately compensated by monetary damages alone.

**Balance of Harms and Public Interest**
The grave injury to Plaintiff far outweighs any burden on the Defendants from being ordered to comply with the law. The public interest is strongly served by upholding civil rights laws, protecting disabled Residents, and ensuring safe and sanitary housing, particularly given Defendants' documented pattern of victimizing vulnerable populations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kelechi Linardon respectfully requests that this Court enter a judgment in her favor and against the Defendants, jointly and severally, and award the following relief:

A. A declaration that the acts and omissions of the Defendants violate the rights of the Plaintiff as protected by the laws cited herein;

B. Award compensatory and punitive damages of at least ten million dollars ($10,000,000.00), or what the Jury deems just and proper, plus interest and costs, to account for but not limited to, the severe physical injuries, ongoing medical procedures, eight weeks and continuous of inhumane torture and deprivation of essential sanitation, pain and suffering and the systematic nature of Defendants' willful and knowing misconduct;

C. A preliminary and permanent injunction ordering Defendants, their agents, and employees to: I. Immediately cease and desist from all harassment, intimidation, and retaliatory conduct against the Plaintiff; ii. Immediately and at their own expense, repair all hazardous and unlawful conditions in Plaintiff's unit OR relocate Plaintiff to a comparable or superior, fully accessible dwelling that meets all of her disability-related needs towards Boston; iii. Immediately comply with the written agreement to provide deep cleaning services every Saturday at 2:00 PM and to provide all necessary supplies for the week; OR if Defendants do not want to deep clean Plaintiff's room properly, the Court should order Defendants to continue paying for Plaintiff's cleaning service with her cleaning company immediately upon the completion of the cleaning of her room on the same day of the once per week cleaning; iv. Immediately reimburse Plaintiff the sum of $290.00 for the cleaning expenses she was wrongfully forced to incur;

D. An Emergency Abuse Prevention Order pursuant to to a person with disabilities (Federal protective class member, elderly, disabled and children) against the defendants and are requesting for emergency protection to prevent sustaining more serious injuries and irreparable harm due to the defendants' malicious deliberate dangerous harms to a nursing chronic disabled patient/person, the Plaintiff;

E. An award of reasonable attorney's fees and the costs of this action, pursuant to all applicable federal and state statutes;

F. Pre-judgment and post-judgment interest at the highest rate permitted by law; and

G. Such other and further relief as the Court deems just and proper.

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: April 14, 2026

**Respectfully Submitted,**
*Plaintiff, pro se*

KELECHI LINARDON
**P.O. Box 52661 Boston, MA 02205**

## RESERVATION OF RIGHTS

**Plaintiff reserves the right to amend this civil action complaint with an attorney in the future.**

**CERTIFICATE OF SERVICE**

I, Kelechi Linardon, hereby certify that on this 14th day of April, 2026, I will serve a true and accurate copy of the foregoing Civil Action Complaint upon the Defendants listed below by [Court Summon] at their last known address:

Home2 Suites by Hilton Chelmsford Lowell Steven Sims, General Manager Loren Day, Regional Director Dilip Patel, Owner Nikul Patel, Owner Ashok Patel, Owner Hitesh Patel, Owner 12 Independence Drive Chelmsford, MA 01824

Jamsan Hotel Management 110 Hartwell Ave Suite 300 Lexington, MA 02421

Hilton Worldwide Holdings Inc. c/o C T Corporation 155 Federal Street, Suite 700 Boston, MA 02110

**LIST OF EXHIBITS (to be presented at hearing includes but not limited to)**

Exhibit A: Extended-Stay Agreement Exhibit B: Copy of Town Violation Notice to Hotel, dated 02/26/2026 Exhibit C: Copy of Town Re-Inspection Violation Notice to Hotel, dated 02/27/2026 Exhibit D: Photographs of Hazardous Conditions Exhibit E: Receipts for professional cleaning services ($50.00 on March 9, 2026; $70.00 on March 21, 2026; $60.00 on March 28, 2026; $60.00 on April 4, 2026; and $50.00 on April 11, 2026 plus future weekly cleaning services payments ) Exhibit F: Written agreement for housekeeping services Exhibit G: Photographs of ant infestation Exhibit H: Boston Globe Article, "Hotel owners are earning millions in contracts by turning their suburban outposts into shelters for homeless and migrants," dated August 1, 2024 (Documenting Jamsan's pattern of unsafe properties and $46,600 fine for health code violations)